[No. 30790.  Department Two.  July 18, 1949.]

S. K. NIELSEN, *Appellant*, v. OTTO DRAGER *et al.*, *Respondents.*[1]

[1]Reported in 208 P. (2d) 639.

*Stuart K. Nielsen, pro se.*
*Byron & Merkel,* for respondents.

GRADY, J.—This action was brought by S. K. Nielsen against Otto Drager and wife to recover damages for the conversion of a ramp and float. The defendants counterclaimed for rental charges for the privilege of attaching the ramp and float to their floats, for services in caring for them, and the value of services rendered in recovering the float when it had broken from its moorings. The court entered a judgment dismissing the action of plaintiff and awarded the defendants a judgment in the sum of one hundred five dollars, and the further sum of ten dollars per month while the judgment remained unpaid and the float and ramp remained in the defendants' possession, together with the costs and disbursements of the action. The plaintiff has taken this appeal from the judgment. The plaintiff will be referred to as the appellant and the defendants in the singular as respondent.

The material facts upon which we base our opinion are not in substantial dispute. In about July, 1947, the appellant was engaged in transporting passengers and freight by seaplane. In order to facilitate landing, appellant constructed a ramp and float which was attached to floats belonging to respondent. The respondent's floats were attached to a dock at Bremerton. The appellant and respondent had a verbal agreement that the sum of thirty dollars per month would be paid for the privilege given to appellant of attaching his landing facilities to those of respondent. The agreement did not provide any fixed time for its duration, but it was contemplated that the arrangement would continue during appellant's seaplane operations.

Sometime about the middle of September, seaplane service ceased. It was anticipated that such service might be resumed in the future. A somewhat indefinite arrangement was then made between the parties whereby the appellant

would leave the ramp and float attached to floats of respondent. No arrangement was made as to any compensation to be paid by appellant either for the use of the floats or for respondent's care of appellant's property. The appellant did not resume seaplane operations.

On December 30, 1947, appellant, through an agent, sought to take possession of the ramp and float, but respondent refused to surrender possession unless paid his charges. At the trial, respondent claimed a lien on the ramp and float and that he was entitled to retain possession until such lien was satisfied. Sometime after December 30th, the float became detached from its moorings and was carried away by the tide. Respondent towed it back, for which service he claimed compensation.

The appellant was entitled to possession of his property on demand unless respondent had a valid lien for his charges. Respondent justifies his possession on Rem. Rev. Stat., § 1191 [P.P.C. § 171-1], which provides:

"Every person, firm or corporation who, as a commission merchant, carrier, wharfinger or storage warehouseman, shall make advances for freight, transportations, wharfage or storage upon the personal property of another, or shall carry or store such personal property, shall have a lien thereon, so long as the same remains in his possession, for the charges for advances, freight, transportation, wharfage or storage, and it shall be lawful for such person, firm or corporation to cause such property to be sold as is herein in this chapter provided."

The relationship between the parties does not bring the respondent within the terms of this statute, nor did he have a common-law lien of a bailee. The rules with reference to the common-law lien of a bailee are set forth in 6 Am. Jur., Bailments, § 274. At page 362 we find:

"To entitle a bailee to a lien on the thing bailed, it is clear that more is necessary than the mere existence of the bailment relationship. . . . Moreover, while it seems evident that some right on the part of the bailee to compensation or reimbursement, either expressed in, or implied from, the contract of bailment is essential in order to entitle him to a lien, nevertheless, at common law it is not every bailee for

hire who has a lien on the article bailed. In general, except for bailees in such special classes as pledgees, factors, and brokers in certain instances, a lien exists in favor only of such a bailee as (1) has by labor or skill contributed to the improvement of the thing bailed, by which its value is increased, or (2) is engaged in some trade or occupation regarded as a public employment, in which the law leaves him no choice but to accept the bailment when offered. Therefore, except where a bailee falls within the latter class, as, for example, in the case of common carriers, innkeepers, and possibly, farriers, warehousemen, and wharfingers, no lien for simply keeping and taking care of property exists, unless one is created by contract of the parties or by statute."

See, also, the annotations in 39 L. R. A. (N.S.) 1164 and Ann. Cas. 1913D, 1300.

The respondent had no lien on appellant's floats on December 30th, and his refusal to surrender possession was a conversion. The appellant was entitled to recover the reasonable market value of the property at the time and place of the conversion, less the reasonable value of the respondent's services rendered prior to the conversion. The trial court found this to be ten dollars per month. It appears from the record that respondent has been paid for his services under the verbal agreement, and we find that he is entitled to payment for approximately two months after the agreement had expired. The respondent was a converter after December 30th and was not entitled to compensation for any services rendered subsequent to the conversion.

The appellant contends that in no event is respondent entitled to compensation for the reasonable value of his services subsequent to the termination of the express verbal agreement, because he did not plead any right of recovery based upon reasonable value. We think the answer sufficient to tender such issue.

Complaint is made that the trial judge exceeded his authority by asking the respondent leading questions as to the reasonable value of his services. We find no prejudicial error in the manner in which the court obtained information on this subject. The trial court, having concluded there was no conversion of the property of appellant, had no oc-

casion to fix or determine its value, and the record is not in such condition that we feel that we can do so.

The judgment is reversed, and the cause remanded to the trial court to ascertain the reasonable market value of the property at the time and place of the conversion, less the value of the services rendered by respondent prior to the conversion in keeping his property. Either party may submit further evidence upon the question at a time and place to be fixed by the court. The appellant will recover costs on appeal.

JEFFERS, C. J., ROBINSON, SIMPSON, and SCHWELLENBACH, JJ., concur.

[1]Reported in 208 P. (2d) 635.